UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HAYGOOD,

           Plaintiff,

v.

GENERAL MOTORS, LLC,

           Defendant.
_____/

Case No. 18-10375

Paul D. Borman
United States District Judge

Anthony P. Patti
United States Magistrate Judge

# OPINION AND ORDER:
## (1) GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FEDERAL CLAIM, 42 U.S.C. § 1981;
## (2) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS, 28 U.S.C. § 1367

In this civil action, Plaintiff Michael Haygood alleges that Defendant General Motors, LLC ("**GM**"), his former employer, unlawfully caused him to be fired by his subsequent employer, non-party Aramark. GM did this, Plaintiff alleges, by revoking Plaintiff's access to the GM Technical Center in Warren, Michigan—the site of his job with Aramark—in retaliation for Plaintiff's complaining about a GM car that he leased after he retired from GM.

Plaintiff asserts a claim for race discrimination under 42 U.S.C. § 1981, as well as state-law tort claims for defamation, tortious interference with contract, and tortious interference with economic expectancy. GM has moved to dismiss all claims asserted in the action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the

reasons stated below, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted with regard to his Section 1981 claim, and will dismiss that claim under Rule 12(b)(6) for that reason. As to Plaintiff's state-law claims, the Court declines to exercise supplemental jurisdiction, and will therefore dismiss them without prejudice.

## I. BACKGROUND

**A. Factual Allegations**

In his Complaint filed on January 31, 2018 (ECF No. 1, Compl.), Plaintiff makes the following factual allegations.

Plaintiff, who is African-American, was employed by GM for approximately 40 years as a skilled trades helper at the GM Technical Center ("**Tech Center**") in Warren, Michigan, until he retired in April 2009. (Compl. ¶ 7-8.) Shortly thereafter, in October 2010, Plaintiff began to work for non-party Aramark, who had a contract with GM, as a custodian at the Tech Center. (*Id.* ¶ 9.)

In 2015, Plaintiff leased a GM-manufactured Cadillac Escalade through an authorized dealer. Plaintiff alleges that he experienced extensive and ongoing problems with the Escalade, and discussed these problems with several GM employees at the Tech Center. (*Id.* ¶¶ 10-11.) Plaintiff first mentioned them to an engineer, who suggested that Plaintiff speak to a GM vice president named Ken Kelzer with whom Plaintiff was acquainted. (*Id.* ¶¶ 13-14.) Plaintiff spoke to Kelzer,

and also to another GM executive, Mark Reuss. Plaintiff alleges that Kelzer was receptive to Plaintiff's concerns, and suggested that Plaintiff correspond with him by email, which Plaintiff did. (*Id.* ¶¶ 15-18.)

Plaintiff alleges that the problems with the leased Escalade persisted, and on October 11, 2016, Plaintiff and his wife participated in a telephone conference with GM's customer service department. (*Id.* ¶¶ 19-20.) During the telephone conference, Plaintiff's wife stated that if the problems were not addressed, she would bring them to the attention of GM's Chief Executive Officer Mary Barra at a public forum that week, and also that she and Plaintiff would retain a lawyer. (*Id.* ¶¶ 21-22.)

Plaintiff alleges that on October 14, 2016, GM banned him from continuing to work for Aramark at the Tech Center, where he had worked as a custodian for six years. Plaintiff alleges that he was instructed to gather his belongings and return his security credentials, and was escorted off the premises without explanation as people took pictures of the incident. In an interview with Plaintiff four days later, Aramark's Human Resources Manager, with whom Plaintiff had been on friendly terms, changed noticeably in her demeanor towards Plaintiff, and told him throughout the conversation to "be honest." (*Id.* ¶¶ 23-27.)

Plaintiff alleges that GM ultimately gave Aramark no choice but to terminate Plaintiff's employment when it banned him from the Tech Center. Plaintiff was terminated by Aramark on October 20, 2016, allegedly for "violating a shop rule that

3

prohibits assaulting, fighting, threatening, intimidating, coercing or interfering with employees or supervisors." (*Id.* ¶¶ 28-29.) Plaintiff alleges that "Aramark breached its contract with Plaintiff because Plaintiff was not terminated for just cause." (*Id.* ¶ 30.)

Plaintiff's union grieved his termination, and in the course of pursuing that grievance, on February 1, 2017, union officials allegedly learned of false and defamatory statements made by GM employees regarding Plaintiff. (Id. ¶¶ 31-32.) According to the Complaint, these included:

> a. Plaintiff threatened Michelle Kline, [Kelzer]'s administrative assistant, and refused to leave the executive office area.
> b. Plaintiff threatened a team lead in the Executive Care Center.
> c. Plaintiff disrupted [Kelzer].
> d. Plaintiff contacted the customer care center and stated he would continue to harass leadership until his problem was resolved.

(*Id.* ¶¶ 33, 51.) Plaintiff alleges that these statements were false, that they were "made and/or repeated by Donna Fulton, a General Motors Global Security Investigator," and that "Fulton reported these false and defamatory statements within GM, leading to Plaintiff being banned from GM premises." (*Id.* ¶¶ 34-36.) Plaintiff also alleges that GM advised Aramark that Plaintiff was banned from the premises with the knowledge that this would result in the termination of his employment, and that Aramark would have reinstated Plaintiff through the union grievance proceedings had GM not continued the ban. (*Id.* ¶¶ 37, 39.)

Plaintiff further alleges that GM "refused to provide any information to Plaintiff or his Union regarding the ban or the circumstances leading up to it." (*Id.* ¶ 38.) Plaintiff claims that "GM deliberately interfered with Plaintiff's relationship with Aramark and caused Plaintiff's termination because he persisted in resolving his issues with the leased Escalade." (*Id.* ¶ 41.)

Plaintiff also alleges that "GM treated Plaintiff with suspicion and fear, in part because he is an African American man" (*id.* ¶ 42), and that "[t]he actions taken against Plaintiff by Defendant GM were taken because of race, to wit: based upon stereotyping Plaintiff as an aggressive black man and/or capitalizing upon that stereotype" (*id.* ¶ 47).

As for the Escalade, Plaintiff retained an attorney and eventually reached an agreement with GM regarding the return of the vehicle under Michigan's "lemon law," Mich. Comp. Laws § 257.1401 *et seq.*

## B. Procedural History

Plaintiff filed this action on January 31, 2018. (ECF No. 1, Compl.) The Complaint asserts four claims: one federal claim—race discrimination under 42 U.S.C. § 1981 (Count I)—and three state claims—defamation (Count II), tortious interference with contract (Count III), and tortious interference with business relationship and expectancy (Count IV).

GM filed the instant Motion to Dismiss on March 7, 2018. (ECF No. 7, Def.'s

Mot.) Plaintiff filed a Response on April 3, 2018. (ECF No. 11, Pl.'s Resp.) GM filed a Reply on April 16, 2018. (ECF No. 12, Def.'s Reply.) The Court conducted a hearing on GM's Motion to Dismiss on June 5, 2018.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted).

In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has recently reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. DISCUSSION

GM seeks dismissal of all of Plaintiff's claims pursuant to Rule 12(b)(6). As explained below, the Court finds that Plaintiff has failed to state a race-discrimination claim under 42 U.S.C. § 1981, and will grant GM's Motion to Dismiss as to Count I of the Complaint for that reason. At the same time, however, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, and accordingly, those claims will be dismissed without prejudice.

**A.  Race Discrimination under 42 U.S.C. § 1981 (Count I)**

42 U.S.C. § 1981 relevantly provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," and that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). The statute further provides

7

that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c). "The purpose for which [Section 1981] was enacted—to afford equal opportunities to secure the benefits of American life regardless of race—requires that a court adopt a broad outlook in enforcing Section 1981. Schemes of discrimination, whether blatant or subtle, are forbidden." *Long v. Ford Motor Co.*, 496 F.2d 500, 505 (6th Cir. 1974). Section 1981 "is an equalizing provision, seeking to ensure that rights do not vary according to race." *Id.*

The essential elements of a claim under Section 1981 are that "(1) plaintiff is a member of a racial minority, (2) defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Burton v. Plastics Research Corp.*, 134 F. Supp. 2d 881, 885 (E.D. Mich. 2001) (quoting *Johnson v. Harrell*, 142 F.3d 434, at *2 (6th Cir. 1998) (table), and collecting authorities).

In the instant case, the Court finds that Plaintiff has not pled sufficient factual matter to satisfy this standard under Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court finds that Plaintiff has failed to meet the second prong of the Section 1981 prima facie case because he has "put forth only conclusory allegations of discriminatory intent. A complaint that includes only conclusory allegations of

discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2009)).

The only allegations in Count One of the Complaint that relate to Plaintiff's race discrimination § 1981 claim are contained in ¶¶ 42 and 47. Paragraph 42 states: "GM treated Plaintiff with suspicion and fear, in part because he is an African American man." Paragraph 47 states: "The actions taken against Plaintiff by Defendant GM were taken because of race, to wit: based upon stereotyping Plaintiff as an aggressive black man and/or capitalizing upon that stereotype."

These are conclusory allegations that "fail to provide the kind of specific facts necessary to make [Plaintiff's] discrimination claim[] plausible." *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 627 (6th Cir. 2013). The Sixth Circuit has made clear that even at the motion-to-dismiss stage, a plaintiff must provide more than just conclusory statements of discriminatory intent. *See id.* at 626 (holding that dismissal was warranted where the plaintiff "provide[d] no facts that would allow a court to infer that the adverse employment action at issue was a result of his race or gender," and instead "list[ed] conclusory allegations of discrimination and fail[ed] to provide, as required by *Twombly* and *Iqbal*, the 'sufficient factual matter' necessary to create an inference of discrimination"). *See also Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 519 (6th Cir. 2015) ("'[B]road and conclusory allegations of

9

discrimination cannot be the basis of a complaint'; rather, 'a plaintiff must state allegations that plausibly give rise to the inference that a defendant acted as the plaintiff claims.' . . . Downs's bare allegation that he was terminated 'due to his age' cannot form the basis of his complaint. Similarly, his membership in the protected group cannot, alone, support his claim.") (internal citations omitted) (quoting *HDC*, 675 F.3d at 614).

None of the alleged defamatory statements by GM employees set forth in the Complaint referenced or even implied race.

The Complaint contains no factual support for Plaintiff's claim that "GM treated Plaintiff with suspicion and fear, in part because he is an African American man." (*Id.* ¶¶ 41-42.)

Thus, while Plaintiff persisted in presenting his automobile complaints to GM, that does not support his allegation that GM acted against him because he was an African-American male, or stereotyped him "as an aggressive black man and/or capitalizing upon that stereotype." (*Id.* ¶ 47.)

Accordingly, the Court grants GM's Motion to Dismiss as to Plaintiff's federal 42 U.S.C. § 1981 claim.

**B.** **State-Law Claims: Defamation, Tortious Interference with Contract, Tortious Interference with Business Relationship and Expectancy (Counts II - IV)**

Plaintiff's remaining three claims—for defamation, tortious interference with

contract, and tortious interference with business relationship and expectancy—arise under Michigan law. Title 28 U.S.C. § 1367(c) provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> . . .
>
> (3) the district court has dismissed all claims over which it has original jurisdiction . . . .

28 U.S.C. § 1367(c).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (internal quotations marks omitted) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996)). Indeed, the Sixth Circuit very recently emphasized that it "has held that 'a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.'" *Winkler v. Madison Cty.*, No. 17-6073, 2018 WL 3121233, at *19 (6th Cir. June 26, 2018) (quoting *Rouster v. County of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)).

Having dismissed the only federal claim over which it had original jurisdiction, this Court declines to exercise supplemental jurisdiction over the state-law claims. Accordingly, the Court dismisses the claims asserted in Counts II, III, and IV of the Complaint without prejudice.

## C. Request for Leave to Amend

After addressing GM's various arguments in favor of dismissal of this action under Rule 12(b)(6), Plaintiff closes his Response by summarily stating that "in the event the court finds Plaintiff's allegations lack specificity, the court should grant Plaintiff leave to amend." (Pl.'s Resp. at 24-25, Pg ID 228-29 (citing *Smith v. Teledyne Industries, Inc.*, 578 F. Supp. 353, 355 (E.D. Mich. 1984)).)

As a general matter, Federal Rule of Civil Procedure 15(a) directs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Sixth Circuit precedent is clear, however, that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)); *see also Graham v. Fearon*, 721 F. App'x 429, 439 (6th Cir. 2018) ("Plaintiffs are not entitled to a directive from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies. [B]ecause Plaintiffs' request was perfunctory and did not point to any additional factual allegations that would cure the complaint, the district court did not abuse its discretion in denying a motion to amend.") (internal quotation marks and citations

omitted).

Plaintiff has offered no specific indication as to *how* he would amend his Complaint, the Court denies his request to amend under Rule 15. Nor did Plaintiff move to amend his Complaint in his Response and "attach the proposed amended pleading to the motion" as required under Eastern District of Michigan Local Rule 15.1.

### IV. CONCLUSION

For the reasons stated above, GM's Motion to Dismiss (ECF No. 7) Count I, Plaintiff's race-discrimination claim under 42 U.S.C. § 1981, is GRANTED. Count I is DISMISSED WITH PREJUDICE.

With respect to Plaintiff's state-law claims (Counts II – IV), this Court DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION over those claims. Accordingly, Counts II, III, and IV of the Complaint are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c).

IT IS SO ORDERED.

Dated:  July 6, 2018                                     s/Paul D. Borman
                                                         Paul D. Borman
                                                         United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 6, 2018.

                                                  s/D. Tofil
                                                  Deborah Tofil, Case Manager